# DAWSON, Adm'r of Estate of David Otis Dawson, infant, ET AL. *v.* CHRISTOPHER

[No. 375, September Term, 1969.]

*Decided June 5, 1970.*

414

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and DIGGES, JJ.

*Donald C. Davis* and *Morton J. Owrutsky*, with whom were *Perdue, Owrutsky & Whitehead* on the brief, for appellants.

*K. Thomas Everngam* for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a directed verdict for the defendant in a wrongful death case. The Circuit Court for Worcester County (Prettyman, J.) concluded that the facts of the case brought it into the long line of "dart-out" cases decided by this Court, since a basis of primary negligence was lacking.

The details of the incident giving rise to this action are simple and relatively undisputed. On May 18, 1967 Margaret Jeanette Brinsfield Christopher, the appellee, was driving her 1965 Chevrolet in a westerly direction on Morris Avenue in Federalsburg, Maryland. Morris Avenue is a residential street thirty feet in width, running in an east-west direction. Of its thirty foot width the center seventeen feet is macadam; gravel shoulders on each side make up the remaining portion.

It was approximately 3:45 p.m. and the day was sunny and dry. Mrs. Otis Dawson and her eight year old son David were delivering newspapers along Morris Avenue. Mrs. Dawson who had been driving her station wagon easterly on Morris Avenue, pulled entirely off the paved portion of the road onto the southern shoulder, still facing east. She gave David a newspaper to deliver to a

house on the south side of Morris Avenue approximately twenty-five feet behind the car. Mrs. Dawson herself crossed Morris Avenue to deliver a paper to a house on the north side. She did not see David again until after the accident.

Appellee Christopher, who was the only person who saw the accident happen, was called as an adverse witness and testified that she saw Mrs. Dawson cross Morris Avenue ahead of her. She was aware that Mrs. Dawson delivered newspapers and apparently recognized the station wagon parked ahead on the left as hers. She said she saw young David come down the steps of a house, go to the right rear door of the station wagon and lean in. She was just about abreast of the station wagon when she observed this. Appellee next testified she kept a lookout ahead down the road, and the child suddenly appeared in front of her. She applied the brakes "as soon as she saw him" but her automobile struck the child. David was thrown through the air by the impact, sustained serious injuries, and died while being driven in an ambulance to the hospital.

A Maryland State trooper investigated the accident and determined the point of impact to be one car length, about twenty feet, to the rear of the Dawson vehicle, ten feet from the southern edge of the macadam or about one and one-half feet into appellee's lane of travel. The area of impact on the Christopher vehicle was the left headlight region. The trooper found skid marks at the accident scene which measured six feet, then a thirteen inch break with no mark, then another sixteen inches of mark, a total of eight feet, five inches. The trooper estimated appellee's speed at twenty miles an hour based on a stopping chart which was received into evidence without objection. Mrs. Dawson estimated that appellee was travelling at twenty-five miles per hour, the maximum legal rate on Morris Avenue, when she noticed her approaching from the east.

"If a child darts in front of an automobile when the driver is obeying the rules of the road and

> driving at a reasonable rate of speed, and the driver cannot by the exercise of due diligence avoid striking the child, the driver is not liable for resulting injuries."

This principle has been established in Maryland law at least since the time of *Henkelmann v. Insurance Co.*, 180 Md. 591, 596, 26 A. 2d 418 (1942). Appellant concedes the force of the principle but insists his case is distinguishable from the "dart-out" type.

His primary reliance is on the admission of appellee Christopher that she saw the child well in advance of the accident. He cites many of the "dart-out" decisions of this Court including several recent ones and points out that those decisions included as a pertinent fact of the case that the injured child was not seen at all, or was seen for the first time in the very act of running into the street. Here appellant claims that the sight of the child near the street should have caused appellee to take precautionary measures such as slowing down, blowing her horn or swerving. The attempted distinction on the basis of whether the child was observed prior to the accident is not persuasive, as most recently illustrated by this Court's decision in *Faulkner v. Cummings*, 256 Md. 552, 261 A. 2d 468 (1970). There the child plaintiff was walking home from school along Maryland Route 33 which is also the main street of the town of Tilghman, Maryland. Defendant was proceeding in her correct traffic lane at ten to fifteen miles per hour. She saw the child walking, but lost him from view temporarily while concentrating on the traffic ahead. She next saw plaintiff when he was about twelve feet in front of her car. He had stepped from between two parked cars and was looking away from her to his left. He came out in front of her without looking in her direction. Defendant did not reduce speed or sound her horn. We affirmed a directed verdict there "even though the 'dart-out' was perhaps not as accelerated as 'dart-outs' in many of the cases." 256 Md. at 558. Although the lack of culpability on the driver's part is more clear where

he has no advance warning of children's presence, the fact that he had general knowledge that children or a particular child was in the area, or even that the particular child injured had a propensity for going into the street has not prevented direction of a verdict against liability. *Faulkner v. Cummings, supra; Alina v. Raschka,* 254 Md. 413, 255 A. 2d 76 (1969) ; *Richardson v. Scott,* 232 Md. 490, 194 A. 2d 288 (1963).

The facts and applicable law here are so similar to those before us in *Faulkner v. Cummings, supra,* we think that case is dispositive of the appeal in this case. *Faulkner* and the other "dart-out" cases proceed on the theory that no primary negligence was shown on the part of the driver, that is, there was no failure to act in a reasonably prudent manner. The essence of this test is obviously the reasonableness of defendant's conduct under the circumstances. The observance of children prior to an accident becomes critical only when that observation would reveal the child so situated that injury is reasonably foreseeable unless the driver takes preventive measures. In *Levine v. Beebe,* 238 Md. 365, 209 A. 2d 67 (1965) the driver of an automobile was approaching what he knew to be a school bus stop. While still a considerable distance away he observed the six-year old plaintiff and her brother standing on the opposite side of the street from the bus stop, and he saw the school bus coming down the road. He proceeded down the road at his normal rate of speed and struck the plaintiff who was running across the street to meet the bus. We held that under those circumstances defendant should have realized the probability that the children would be required to cross the highway for the purpose of boarding the bus. We found the potential aspect of their crossing the road was very real, and that it was a jury question whether reasonable care required reduction of speed or similar precautionary measures. However Judge Marbury observed that the case was a "borderline" one and came "very close to fitting in the category of the long line of child-darting-in-front-of-motorist cases." 238 Md. at 369.

Characterization of that case as "borderline" shows how different is the instant case.

Mrs. Christopher was driving down a residential street in her proper lane of traffic at a speed estimated at most as twenty-five miles per hour, but possibly much less based upon the physical evidence and a stopping chart introduced into evidence. She saw both the child and Mrs. Dawson. There was no testimony which would indicate appellee would have had any reason to anticipate the child would be crossing the street at that point. Appellee Christopher testified that her last sight of the child before he appeared in front of her car, was of him leaning into the rear door of his mother's car, a position of apparent safety. Having called appellee as their witness plaintiffs are bound by her testimony unless contradicted. *Vokroy, Adm'r v. Johnson,* 233 Md. 269, 196 A. 2d 451 (1964).

Appellants seem to contend that once having seen the child, appellee was guilty of negligence in not keeping her primary attention directed to him. We note in this case as in virtually all the other "dart-out" cases that the accident occurred in the middle of a city block, where vehicles are accorded the statutory right-of-way. Code (1957, 1967 Repl. Vol.) Art. 66½, § 236 (a). Further, in the case of *Mumford v. United States,* 150 F. Supp. 63, 66 (D. Md. 1957), Judge Thomsen applied Maryland law in observing the duty of an automobile driver is to use "reasonable care to observe conditions along the side of a highway, although his *primary* attention should be directed to the road in front" (emphasis supplied).

Appellant's specifications of negligent acts are familiar ones in this type of case. *See Alina v. Raschka, supra.* But they are all predicated on a theory that defendant should have become aware of a potentially dangerous situation much sooner than she in fact did. The theory of "dart-out" cases, however, is that the peril is first apparent to the driver when even reasonable care will not suffice to avoid injury. We conclude that was the situation here. These types of cases have found no primary negligence as a matter of law, so that the child's contributing negligence

is not ordinarily an issue discussed. We express no opinion on that issue here except to note that eight year old infants are not precluded as a matter of law from being contributorily negligent. *Mumford v. United States, supra.* We conclude the trial judge was correct in directing a verdict for the defendant.

*Judgment affirmed. Costs to be paid by appellants.*