515 A.2d 213

**Kenneth Lee HOLCOMB**

v.

**STATE of Maryland.**

**No. 123, Sept. Term, 1985.**

Court of Appeals of Maryland.

Oct. 2, 1986.

458

Melissa M. Moore, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH,* ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled

RODOWSKY, Judge.

In this prosecution for murder the trial court admitted as a business record a contemporaneous memorandum, prepared by a police officer but not signed by the accused, which contained the accused's oral confession. We granted certiorari primarily to decide whether the State was required to prove that the accused had acknowledged the accuracy of the document's content. The State was not so required, as explained below.

On October 21, 1982, Tanea M. Rothschild, age 35, was found dead in her apartment in Baltimore County. She had been strangled and repeatedly stabbed. The next day the police interviewed the petitioner, Kenneth Lee Holcomb (Holcomb), an employee of a painting contractor who had been painting the apartment adjoining that of Ms. Rothschild on the day of the murder. Holcomb gave an exculpatory statement, written partly by him and partly by Detective William Ramsey, which Holcomb signed. On October 26 Holcomb agreed to a polygraph examination. Detective Frank Davelli (Davelli) administered the test in an interview room at the Baltimore County police headquarters. No third person was present. After the test when Davelli told Holcomb that, in Davelli's opinion, Holcomb was lying, Holcomb admitted the murder and answered a series of questions from Davelli. Davelli asked Holcomb if the latter would repeat the same statement in the presence of Detective Ramsey and Holcomb agreed. When Davelli brought Ramsey into the interview room, Ramsey again read to Holcomb the Miranda rights. At that time Holcomb said that he wished to have an attorney and all questioning ceased.[1]

pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and the adoption of this opinion.

1. The preceding paragraph is principally based on testimony taken at the hearing of Holcomb's motion to suppress the oral confession.

Beginning within fifteen minutes after Holcomb had confessed Davelli prepared in longhand his report of the polygraph examination. It included in question and answer form his recollection of the words spoken by him and by Holcomb when Holcomb confessed. That longhand report was subsequently typed. There is no evidence that the police ever showed Holcomb Davelli's memorandum of Holcomb's confession or that Holcomb at any time acknowledged the accuracy of that memorandum.

The State charged Holcomb with first-degree murder. At his first trial the jury was unable to agree on a verdict.[2] At the retrial Davelli testified on April 12, 1984. He described Holcomb's oral confession by reading the questions and answers that he had written in the memorandum prepared by him on October 26, 1982. The State then offered a redacted form of Davelli's report which eliminated all reference to the polygraph examination and was limited to Davelli's contemporaneous memorandum of the oral confession. Over defense objection the trial court admitted the exhibit as a business record.[3]

Holcomb took the stand in his defense. He denied confessing to Davelli who, he said, had screamed accusations at him until Holcomb threatened to punch Davelli in the face.

---

**2.** The proceedings at the first trial have not been transcribed. The record, however, does contain two notes from the jury foreman at that trial. The first reads: "We have not been able to reach a verdict. [M]any feel that the evidence is not sufficient for conviction except for oral confession." A second note reads: "Was the verbal confession entered as evidence. If so[,] should it not have been in evidence box[?]" The trial judge, who was not the judge presiding at the retrial, answered: " 'In response to your question: There is no tangible or physical evidence relating to this issue. You may consider only the oral testimony.' "

**3.** Under ordinary procedures the jury has exhibits in its possession during deliberations. Maryland Rule 4–326(a) in part provides that "[u]nless the court for good cause orders otherwise, the jury may also take the charging document and exhibits which have been admitted into evidence" with them when they retire for their deliberations. In the case before us defense counsel did not ask the court to withhold Davelli's memorandum from the jury when it retired.

The jury found Holcomb guilty and the court sentenced him to life imprisonment. Holcomb appealed, contending that the writing was inadmissible because it was undisputed that he, personally, had never acknowledged its accuracy.

The Court of Special Appeals affirmed with an unreported opinion. While recognizing that Davelli's memorandum involved two levels of hearsay, that court concluded that the report was admissible as a business record and that the business record contained the words of a party which were offered against that party. The intermediate appellate court further concluded that no principle of present Maryland law would exclude the otherwise admissible memorandum by requiring "an incrementally greater burden of proving the document's reliability and accuracy." Although the court described as "logical and just" the requirement that the accused acknowledge a written memorandum of an oral confession, the court, citing, *inter alia, Hall v. State,* 223 Md. 158, 162 A.2d 751 (1960), said it was bound by precedent. We granted cross-petitions for certiorari.

Holcomb submits that (1) Davelli's memorandum of the oral confession was not admissible as a business record because Holcomb had no duty to make a truthful statement to Davelli, and that (2) a writing prepared by one other than the accused which purports to embody an inculpatory statement made by the accused should not be admitted into evidence until the writing is signed by the accused or the accused has in some fashion acknowledged the correctness of the writing.

(1)

■ The Maryland business records statute defines "business" to include "business, profession, and occupation of every kind." Md.Code (1974, 1984 Repl.Vol.), § 10–101(a) of the Courts and Judicial Proceedings Article. The statute applies to both criminal and civil cases. *Jones v. State,* 205 Md. 528, 109 A.2d 732 (1954). In general, those portions of the report of a police investigation which record the facts obtained by the direct sense impressions of the investigat-

ing officer are admissible as a business record while those portions which report objectionable hearsay and opinions of the investigator are inadmissible as a business record. *See Aetna Casualty & Surety v. Kuhl,* 296 Md. 446, 463 A.2d 822 (1983); *Holloway v. Eich,* 255 Md. 591, 258 A.2d 585 (1969); *Austin v. State,* 253 Md. 313, 252 A.2d 797 (1969) (by implication); *Levine v. Beebe,* 238 Md. 365, 209 A.2d 67 (1965); *Cain v. State,* 63 Md.App. 227, 492 A.2d 652 (1985); and *Honick v. Walden,* 10 Md.App. 714, 272 A.2d 406 (1971). And *see Aravanis v. Eisenberg,* 237 Md. 242, 206 A.2d 148 (1965) (descriptions of what took place at the scene of a fire as reported by firemen, on their return to fire station, to fire marshal and recorded in fire marshal's file admitted as a business record to prove the truth of the matters described).

Holcomb does not question the formal foundation laid in this case for admitting Davelli's memorandum as a business record. Rather, relying on *Aetna Casualty & Surety, supra,* he contends that because he "had no duty to make a truthful statement" to Davelli the statement is not admissible through the vehicle of the report as a business record. Holcomb's argument ignores the fact that his oral confession was an admission by a party opponent.

*Aetna* was a declaratory judgment action in which an automobile liability insurer sued the person claiming against its insured for a declaration that there was no coverage because the insured had intentionally, as opposed to accidentally, collided with the claimant. The claimant sought to introduce the written statement given by the insured to the investigating police officer in which the insured stated that the occurrence was accidental. We held that the written statement was properly excluded. It could not come into evidence under the business records exception to the hearsay rule because the insured "had no duty to make a truthful statement" to the police. 296 Md. at 454–55, 463 A.2d at 827. *Aetna* went on to reject other hearsay exceptions argued in support of admissibility of the insured's statement. *Aetna* did not involve a report con-

taining hearsay which would be admissible under the exception for admissions by a party because the declarant, *i.e.*, the insured, was not an agent for admissions of the insurer against whom the report was offered.

Use of the business records exception at the second level of hearsay is analyzed in *State v. Lungsford*, 167 N.J.Super. 296, 400 A.2d 843 (1979), an opinion with which we agreed in *Aetna*. Lungsford had been convicted of receiving a stolen car. At his trial the prosecution introduced police reports of information received from the owner of the car, including the vehicle identification number. The number found on the car possessed by Lungsford matched the number related by the owner. It was error to admit the police report to prove the number on the owner's car. The *Lungsford* court stated the rule to be that

[i]f the declarant is not available to testify and if the statement is not admissible under some other exception to the hearsay rule, such as excited utterance or dying declaration, then admissibility cannot be predicated exclusively upon the circumstance that the statement was made to a police officer who paraphrased its content in his report. [*Id.* at 309, 400 A.2d at 849.]

The reason why the business records exception would not extend to the second level hearsay in *Lungsford* was

that one of the critical circumstances importing reliability is the fact that the informant whose declaration is so recorded is under a duty, in the context of the activity in which the record is made, to make an honest and truthful report. Thus, the business record exception is predicated not only on the circumstance that the record itself is kept in the usual course of the business but also on the circumstance that the recorded information is obtained by the recorder from a declarant having a "business" duty to communicate it truthfully. [*Id.*]

*Aetna* also favorably cited *Hutchinson v. Plante*, 175 Conn. 1, 392 A.2d 488 (1978). That court pointed out that drivers' "statements contained in a police accident report

may not be admitted [as business records] for the truth of the matter stated unless they qualify under some other exception to the hearsay rule, such as admissions." *Id.* at 5, 392 A.2d at 490.

■ Here, Holcomb, the declarant, made an admission to Davelli who recorded it in the course of "business." The Court of Special Appeals correctly held that the business record was admissible to prove the truth of the facts related in Holcomb's statement because the second level hearsay fell within the exception for admissions by a party opponent.

### (2)

■ Holcomb secondly contends that "because the document in this case purports to be an inculpatory statement . . . which is both unsigned and unacknowledged," this Court should "adopt the rule fashioned by a substantial number of other jurisdictions that if an oral statement purporting to be the accused's confession is reduced to writing by a third person, until the statement is signed or its correctness is acknowledged in some fashion by the accused, the written instrument is not admissible in evidence as the written confession of the accused and the oral testimony of the witness is the only admissible evidence of the purported confession." Holcomb's submission repeats verbatim the synthesis from the Court of Special Appeals' opinion in this case of the decisions relied upon by Holcomb. Those cases do not support that statement. They simply apply a particular court's rule concerning the admissibility as an exhibit of a memorandum from which a witness has testified as a record of past recollection.

■ In Maryland a memorandum recording past recollection may be admitted into evidence as a document. *See Hall v. State, supra,* 223 Md. 158, 162 A.2d 751. In some jurisdictions the witness is limited to reading the memorandum to the jury but the memorandum itself is not admissi-

ble as a documentary exhibit. *See, e.g.,* Fed.R.Evid.R. 803(5).[4]

The earliest of the cases relied on by Holcomb is *State v. Folkes,* 174 Or. 568, 150 P.2d 17, *cert. denied,* 323 U.S. 779, 65 S.Ct. 189, 89 L.Ed. 622 (1944) in which a death penalty was affirmed. A secretary employed in the homicide bureau of the Los Angeles police department testified that she had accurately taken down in shorthand the conversation between the accused and certain police officers, that she could not remember verbatim what she had heard but that a transcript prepared by her was an accurate transcription of her notes. The court held that the admission of the transcript was error, but not grounds for reversal. It reasoned:

We can find no tenable objection to the substance of [the transcript]. Every part of it was proper for the consideration of the jury. The technical error relates solely to the manner in which it was brought to their attention. It was received in evidence as an exhibit. It was, in fact, a memorandum. As an exhibit, the jury saw it and heard it read by the district attorney. As a memorandum the jury would not have seen it, but would have heard it read. The reading would have been by the witness on the stand instead of by the district attorney. The identical confession would have been before the jury with this difference: it would have been proven as an oral confession by the refreshed recollection of the stenographer who took it down or as a memorial of lost recollec-

---

**4.** The federal rule reads:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

tion, instead of being proven as a written confession in and of itself. [*Id.* at 577, 150 P.2d at 20–21.]

This analysis focuses on the first level of hearsay. Oregon at that time did not admit, as part of the testimony of the witness who had personal knowledge, the writing embodying that witness' past recollection. Consequently, to admit the memorandum of an oral confession based on testimony by the memorandum's maker, the prosecution had to prove that the accused had adopted the writing as his own.[5]

*State v. Cleveland,* 6 N.J. 316, 78 A.2d 560, 23 A.L.R.2d 907 (1951) is to the same effect, holding:

[T]he rule is ... that until the statement is signed or its correctness acknowledged in some fashion by the defendant, it constitutes merely a memorandum of what was said and is inadmissible in evidence. In such cases, the State is limited to the oral testimony of witnesses who were present when the statement was made. They may, for the purpose of refreshing their recollections, where necessary, refer to notes made at the time by them, or under their supervision. [*Id.* at 329, 78 A.2d at 567.]

Two decisions in New York reach the same result apparently on similar reasoning. *People v. Lebron,* 46 A.D.2d 776, 360 N.Y.S.2d 468 (1974) simply cites to *People v. Kenny,* 20 A.D.2d 578, 246 N.Y.S.2d 92 (1963) which in turn cites *State v. Cleveland, supra,* and *State v. Folkes, supra,* to explain the result.

*Williams v. State,* 185 So.2d 718 (Fla.Dist.Ct.App.1966) excluded a stenographer's unadopted transcript of a confession because it was a memorandum of the stenographer and

---

**5.** In *State v. Sutton,* 253 Or. 24, 450 P.2d 748 (1969), the Oregon Supreme Court upheld admitting the record of past recollection as a writing and held that testimony from the witness of impaired recollection was not required. Then, in *Elam v. Soares,* 282 Or. 93, 577 P.2d 1336 (1978), that court partially overruled *Sutton* by requiring that the witness have insufficient recollection to testify fully and accurately. *Elam,* however, left open whether the court would reconsider admissibility of the memorandum as an exhibit.

not a statement by the accused. That decision was relied upon to approve the exclusion of such a transcript when it was offered by the defendant. *See Marshall v. State,* 339 So.2d 723 (Fla.Dist.Ct.App.1976). But the Supreme Court of Florida would not extend the rule to prohibit a stenographer from reading the unadopted transcript of a confession into the record as past recollection recorded. *See Middleton v. State,* 426 So.2d 548 (Fla.1982), *cert. denied,* 463 U.S. 1230, 103 S.Ct. 3573, 77 L.Ed.2d 1413 (1983).

Many courts permit the contemporaneous memorandum of an oral confession to be admitted into evidence after a competent witness has testified to its accuracy, without additionally requiring that the accused have adopted the writing as an accurate embodiment of the confession. *See Hobbs v. State,* 401 So.2d 276 (Ala.Crim.App.1981); *Bosko v. People,* 68 Colo. 256, 188 P. 743 (1920); *People v. Perkins,* 17 Ill.2d 493, 162 N.E.2d 385 (1959); *People v. Reed,* 333 Ill. 397, 164 N.E. 847 (1928); *People v. McNeil,* 99 Ill.App.2d 273, 240 N.E.2d 721 (1968); *Boyd v. State,* 430 N.E.2d 1146 (Ind.1982); *Mobley v. State,* 227 Ind. 335, 85 N.E.2d 489 (1949); *State v. Saltzman,* 241 Iowa 1373, 44 N.W.2d 24 (1950);[6] *State v. Dierlamm,* 189 La. 544, 180 So. 135 (1938); and *Prather v. State,* 76 Okla.Crim. 385, 137 P.2d 249 (1943). The foregoing opinions present no technical analysis of the evidence rule being applied but seem to treat the writing as part of the testimony of the witness. In this respect the result is much the same as that under Maryland law. *See Hall v. State, supra,* 223 Md. 158, 162 A.2d 751; *Owens v. State,* 67 Md. 307, 10 A. 210 (1887).

There are other variations in the reported decisions but none of them requires a higher standard of proof because the subject matter of the memorandum is an oral confession. In *State v. Foulds,* 127 N.J.L. 336, 23 A.2d 895 (1941),

---

**6.** In *State v. Saltzman* the memorandum prepared by the police of the defendant's confession recited that the defendant had been shown the writing and refused to sign it, but had stated that the content of the writing was true. The court did not rest on this factor in approving admissibility of the writing.

the memorandum dealt with an oral confession given after an earlier, signed confession but also after the victim of a shooting had died. The memorandum was said to corroborate the earlier, signed confession and was admitted. In *State v. Fox*, 277 N.C. 1, 175 S.E.2d 561 (1970), a transcript, which the defendant had refused to sign, was made from a sound recording of a confession made after an earlier unrecorded confession. The transcript was admitted to corroborate testimony describing the earlier confession.

Perhaps the absence of a policy factor specially at work with respect to memoranda of confessions is best illustrated by the adoptive memoranda cases. In these cases the memorandum is received into evidence on the ground that the accused acknowledged the accuracy of the memorandum based on testimony to that effect given by the police. *See State v. Haworth*, 24 Utah 398, 68 P. 155 (1902); *State v. Reed*, 56 Wash.2d 668, 354 P.2d 935 (1960), *cert. denied*, 368 U.S. 857, 82 S.Ct. 96, 7 L.Ed.2d 54 (1961).

■ Where, as here, testimony describing an oral confession is admissible on behalf of the State, there is no rule of evidence governing the admissibility of a memorandum of that confession which is unique to memoranda of oral confessions. The rules of evidence pertaining to memoranda containing other kinds of proffered evidence govern the admission or exclusion of the memorandum of an oral confession.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY KENNETH LEE HOLCOMB.