Argued January 10, affirmed February 23, petition for
rehearing denied March 27, 1973

RIGELMAN, *Appellant, v.* GILLIGAN, *Respondent.*

506 P2d 710

*James H. Clarke,* Portland, argued the cause for appellant. With him on the brief were McColloch, Dezendorf, Spears & Lubersky, Robert E. Maloney, Jr., and Richard H. Williams, Portland.

*Cleveland C. Cory,* Portland, argued the cause for respondent. With him on the brief were Davies, Biggs, Strayer, Stoel & Boley and Clarence R. Wicks, Portland.

Before O'Connell, Chief Justice, and Denecke, Holman, Tongue, Howell and Bryson, Justices.

TONGUE, J.

This is an action for personal injuries received in an automobile accident. Plaintiff was a passenger in an automobile which collided at an intersection with an automobile being driven by defendant. The jury returned a verdict in favor of defendant. Plaintiff appeals from the resulting judgment. We affirm.

Plaintiff's only assignments of error are that the trial court erred in denying the request of plaintiff's attorney, upon commencing the cross-examination of defendant, that his attorney produce copies of statements given by the defendant for use in cross-examination.

In support of these assignments plaintiff contends that in *Pacific N.W. Bell v. Century Home,* 261 Or 333, 491 P2d 1023, 494 P2d 884 (1972), we held that after an adverse witness has testified in a civil action, the opposing counsel, in order to effectively cross-examine, may be entitled to see and use previous statements of the witness (339) and that the "work product" rule does not protect statements from production at trial (*Id.* at 340). Plaintiff also contends that this rule has particular application when the witness is a party, as in this case, because prior inconsistent statements of a party may not only be used to impeach the credibility of his testimony as a witness, but as admissions by a party.

In addition, plaintiff contends that upon subsequent examination of the statement given by defendant in this case to an insurance adjuster the day after

the accident it is "clear that it contradicted defendant's testimony in material respects," with the result that the ruling of the trial court was not only erroneous, but prejudicial, and deprived plaintiff of a fair trial.

In response, defendant contends that the trial court acted properly in refusing to compel defendant's attorney to produce the statement, which consisted of transcription of a telephone conversation between defendant and a Mr. Messmer, who was an insurance adjuster, for the reason that even though the statement did not disclose that Mr. Messmer was an insurance adjuster, his identity as such "would have become known to the jury in one way or another." Thus, defendant contends that the trial court acted within its sound discretion to exclude reference to the existence of liability insurance within the rule of *Blake v. Webster Orchards*, 249 Or 348, 437 P2d 757 (1968), and *Garber v. Martin*, 261 Or 410, 494 P2d 858 (1972).

Defendant also contends that *Pacific N.W. Bell v. Century Home, supra,* is not in point because it "did not involve the *possible* prejudicial injection of insurance" and because in that case the witness had previously referred to the existence of such a statement. In addition, defendant contends that a comparison of the contents of the statement with defendant's testimony shows that plaintiff was not prejudiced because there were no significant inconsistencies.

■ *The trial court erred in denying plaintiff's request for previous statements by defendant for use in cross-examination.*

In considering whether the trial court erred in denying plaintiff's request for previous statements by

defendant for use in cross-examination, reference must be made to the transcript of the trial proceedings. The following appears from the record at the conclusion of defendant's testimony on direct examination:

"MR. MALONEY: Your Honor, I request Mr. Wicks provide me with all copies of statements he has from the witness before I cross-examine.

"THE COURT: I deny —

"MR. MALONEY: That is the Pacific Northwest Bell case, your Honor.

"THE COURT: I will deny it."

The following also appears from that record when plaintiff subsequently undertook to make an offer of proof outside the presence of the jury:

"THE COURT: * * * Put your matter [offer?] of proof on.

"MR. MALONEY: If Mr. Wicks would simply stipulate there are statements obtained from Mr. Gilligan concerning the accident that he has possession of I wouldn't need to make —

"MR. WICKS: I will stipulate that we took a recorded telephone —

"* * * * *

"MR. WICKS: A statement was taken from you by telephone right after the accident?

"THE DEFENDANT: Yes.

"THE COURT: There is the question of a work product, the work product of an attorney, the question of just getting around who would he give a statement to right after the accident except his own insurance company. These little inferences and it's these innuendoes, I don't like them.

"Put on your matter [offer?] of proof. If you

lose the case you have the Supreme Court to rule on it.

"* * * * *

"MR. MALONEY: Q Mr. Gilligan, after that accident did you give a statement concerning the accident to a representative of yours over the telephone?

"A He wasn't a representative of mine.

"Q Did you give a statement about the accident to someone over the telephone?

"A Yes, the —

"Can I say anything I want now?

"MR. WICKS: Yes, the jury is not here.

"A That was people insuring the rented car, the Continental Group.

"MR. MALONEY: Q And made one a couple of days after the accident?

"A It was made that night. It was made within — within an hour after the accident.

"Q All right. Thank you very much, Mr. Gilligan.

"Mr. Wicks, would you just stipulate that you have the statement, the possession of it?

"MR. WICKS: I am tempted to stipulate you can have it if you will give it to the jury.

"MR. MALONEY: I couldn't do that.

"THE COURT: Yes, I am not letting anybody stipulate to anything. I have expressed my feeling about this.

"MR. WICKS: I have a statement, your Honor.

"THE COURT: Well I assume it must have been transcribed off the telephone.

"MR. WICKS: Yes, and I think Mr. Gilligan is in error. I think he phoned a report of the accident the night that it occurred. This is a recording

of a telephone conversation made the next day. * * * "

a. *There was no violation of the attorney "work product" rule.*

In *Pacific N.W. Bell v. Century Home, supra,* the decision relied upon by plaintiff in this case, a defendant's witness, on cross-examination by plaintiff, testified to the existence of a previous written statement by another person. Plaintiff then moved the court to require defendant's counsel to produce that statement. Defendant objected on the grounds that the statement was the work product of a lawyer and that no good cause had been shown, as required under the rule of *Hickman v. Taylor,* 329 US 495, 67 S Ct 385, 91 L ed 451 (1947). Under those circumstances we held (261 Or 340-41):

"Whatever immunity from examination is granted to witnesses' statements upon the ground that such statements are a lawyer's work product, is not available at this stage of the proceeding. It is not applicable when there is a request to examine a statement referred to by a witness.

"A majority of the Wisconsin court in *Shaw v. Wuttke, supra* (28 Wis2d at 456), held: '[T]he immunity of the attorney's work product in respect to a written statement ceases to exist when the person making the statement is placed on the stand as a witness at the trial.'"

In this case the statement involved was one made by the witness himself, rather than a statement by another person. In addition, the statement in this case was made by the defendant himself. Insofar as the "work product" rule is concerned, these distinctions may not require a different result.

■ Of more importance, however, is the fact that

the statement in this case was not taken by or under the direction of an attorney, but by an insurance adjuster. Moreover, no contention was made by defendant, either on trial or on this appeal, that this statement was protected by the "work product" rule.[1]

Under these circumstances, the trial judge was premature in ruling sua sponte, without waiting for any objection by defendant, that plaintiff's demand for production of defendant's prior statement was improper, at least insofar as that ruling was based upon his assumption that "there is the question of * * * the work product of an attorney."[2]

b. *That the request for defendant's previous statement might possibly interject the fact of insurance was not a proper ground to deny that request.*

■ ■ The remaining ground on which the trial judge denied plaintiff's request for defendant's previous statement was that to grant that request would have interjected into the case the prejudicial fact of

---

[1] It is also to be noted that no contention was made in this case that to require the production of the statement made by defendant would violate the privilege of communications between attorney and client, as distinguished from the "work product" rule.

[2] For similar reasons we need not now consider or decide the contention made by defendant for the first time on this appeal that plaintiff was not entitled to the production of defendant's statement under the authority of our decision in Pacific N.W. Bell v. Century Home, 261 Or 333, 491 P2d 1023, 494 P2d 884 (1972); because that decision must be distinguished on the ground that in that case the witness made reference in his testimony to the existence of the previous statement before a request was made for the production of that statement, whereas in this case plaintiff's attorney, upon commencing his cross-examination, requested the production of any such previous statements.

See also Edwards v. Mt. Hood Const. Co., 64 Or 308, 315, 130 P 49 (1913).

insurance because the jury could have reasonably drawn such an inference from that statement.

It is true, as contended by defendant, that we have held that the trial judge may, in the exercise of his sound discretion, grant a mistrial or a new trial when the existence of liability insurance has been interjected into the trial of a case before a jury, even though inadvertently and unintentionally. *Blake v. Webster Orchards, supra,* and *Garber v. Martin, supra.*

In this case the transcript of the statement taken from defendant does not, on its face, reveal that it was taken by an insurance adjuster.[9] The statement shows that it was taken by Mr. Messmer and bears a file number. It is possible that a jury might infer that Mr. Messmer was an insurance adjuster and that the statement was taken from an insurance file. It is also possible that the jury might infer from the fact that defendant had given a previous statement to someone, that such a statement was taken by an insurance adjuster. It is equally possible, however, that the jury might infer that any such statement was taken by defendant's attorney and was taken from his file.

We hold that because the jury *might* have inferred from the statement, or from the fact of its existence, that the statement was taken by an insurance adjuster was not a sufficient reason to deny plaintiff's request that it be produced. We fully recognize what the trial court referred to as "[t]hese little inferences" and "innuendoes." We believe, however, that any such in-

---

[9] Although the trial judge refused to require defendant to produce the statement for use by plaintiff's attorney in the cross-examination of defendant, a copy of the statement is nonetheless included in the trial court file, by stipulation of counsel, and its contents are discussed by both parties in their briefs on this appeal.

ferences and innuendoes were outweighed by the right of an attorney for one party to examine previous statements by an opposing party as an aid in cross-examination. Indeed, it is well established that even evidence which actually interjects the fact of insurance into a case is nevertheless admissible when such evidence is either relevant to the issues of the case or admissible to show bias or interest of a witness. *Albrecht v. Safeway Stores, Inc.*, 159 Or 331, 345, 80 P2d 62 (1938); *Quigley v. Roath*, 227 Or 336, 343, 362 P2d 328 (1961); *Smith v. Pacific Truck Express*, 164 Or 318, 332, 100 P2d 474 (1940); Annot., 4 ALR2d 761, and McCormick on Evidence (2d ed 1972) 480, § 201.

A further reason for such a result in this case is that it does not follow from the fact that plaintiff's attorney requested production of the statement for his use in cross-examination of defendant that he either would or could have offered that statement in evidence. Indeed, plaintiff's counsel declined the suggestion by defendant's attorney of a stipulation that "* * * you can have it if you will give it to the jury."

■ Plaintiff's attorney, on reading the statement, might have found that there was no material inconsistency. He might have used the statement solely for the purpose of framing questions on cross-examination. He might also have used the statement in cross-examination by handing it to the witness in an attempt to refresh his memory. Even in such an event, however, a statement used for that purpose is not, for that reason, admissible in evidence as an exhibit. *State v. Sutton*, 253 Or 24, 26, 450 P2d 748 (1969).

And even if plaintiff's attorney had sought to offer the statement in evidence, either as an admission by a party or for any other purpose, he could not have

done so unless it was properly identified by Mr. Messmer as the person who took the statement, unless defendant admitted its authenticity. There was nothing in the record to show either that Mr. Messmer was available for that purpose or that defendant would have made such an admission.[4]

2. *The error in denying plaintiff's request for defendant's previous statement was not prejudicial under the circumstances of this case.*

Plaintiff's brief states that "[T]he day after the accident, defendant gave a statement to an adjuster which directly contradicted one important part of his testimony at trial and made no reference at all to another"; that "[T]he court erroneously prevented plaintiff from cross-examining defendant about these significant inconsistencies between his earlier statement and his testimony," and that "* * * the document convicts the witness of misrepresenting material facts either to an insurance investigator or the jury," so as to render the ruling by the trial court both erroneous and prejudicial.

For reasons previously stated, we agree that the ruling was erroneous. We do not agree, however, that the ruling was prejudicial under the circumstances of this case.

If the record supported defendant's contention that there was a direct contradiction between defendant's testimony on trial and his previous statement,

---

[4] In addition, the file number or anything else appearing on the face of the statement that would or might indicate that the statement was taken by an insurance adjuster or came from the file of an insurance company could well be erased or obliterated. Cf. Gallagher v. Portland Traction Co., 181 Or 385, 393, 182 P2d 354 (1947), and Cameron v. Columbia Bldrs., Inc. et al, 212 Or 388, 394, 320 P2d 251 (1958).

we would agree that the error was prejudicial. Upon reading the record, however, we find no such direct contradiction. Indeed, it is arguable whether there were any substantial contradictions, either direct or indirect.

Defendant testified on direct examination that he did not see the Rigelman car before the collision; that it "[d]idn't have any lights on," and that after the collision he "went over to look at it because I was quite sure the lights were out, but I was making double sure."

The claimed inconsistency is that although in his previous statement defendant also said that the Rigelman car "didn't have his lights on" and that no one was injured, as far as he knew, he then gave the following answer in response to the following question:

"Q. Was the front of his car damaged?
"A. I didn't really examine his car; but it must have been the way he caved in the side of this Dodge. I don't see how it could have helped but have been pretty severely damaged."

■ Plaintiff contends that this was a "significant contradiction" which "destroyed defendant's credibility as to those matters, and, in addition, as to the rest of his testimony."

In our view, this contention is extravagant, to say the least. Defendant's testimony that he went over to look at the Rigelman car to be sure that the lights were out is not "directly inconsistent" with his previous statement, in response to a question whether the front end of the car was damaged, that he "didn't really examine the car."

■ Even less substantial is appellant's contention that "[d]efendant testified at trial that he had to

'inch out' into the intersection and block Mr. Rigel-man's path on the through street because a parked truck obstructed his view to the right," whereas "in describing the accident to Mr. Messmer, he made no mention of any obstruction to his view." Upon exami-nation of his statement to Mr. Messmer it appears that defendant did not undertake to "describe the accident," except to answer specific questions asked by Mr. Messmer, who asked him no questions about possible obstructions to his view.

We recognize that in order for a prior statement to be admissible in evidence as a "prior inconsistent statement," it may be sufficient if there is "any material variance"; that in applying the criterion of material inconsistency a fair range of discretion should be accorded the trial judge, and that the courts should "lean toward receiving such statements in case of doubt, to aid in evaluating the testimony." McCormick on Evidence (2d ed 1972) 68, 69, § 34.

Nevertheless, we seriously question whether it can properly be said that there was any variance be-tween defendant's testimony and his previous state-ment to Mr. Messmer so material as to require a holding that had the trial judge excluded testimony of such a claimed inconsistency on that ground, such a ruling would have constituted an abuse of discretion.

Even assuming, however, that there was such a material variance, we are of the opinion, after con-sidering the nature and extent of any such variance in the light of the circumstances of this case, that any resulting error was so insubstantial as not to be prejudicial.

For these reasons we affirm the judgment of the trial court.