On remand from the Supreme Court April 26, reversed and remanded for new trial August 3, reconsideration denied September 16, petition for review allowed by opinion October 25, 1983

See 295 Or 811, 670 P2d 1026 (1983)

# VAN GORDON,
*Respondent,*

*v.*

# PORTLAND GENERAL ELECTRIC COMPANY,
*Appellant.*

# PORTLAND GENERAL ELECTRIC COMPANY,
*Appellant.*

*v.*

# BARKER et al,
*Respondents.*

(A7902-00508; CA 19901)

667 P2d 532

John R. Faust, Jr., Portland, appeared for appellant. With him were Schwabe, Williamson, Wyatt, Moore & Roberts, James K. Buell, and Buell, Black, Gates & Dupuy, Portland.

Janet C. Neuman, Portland, appeared for respondent Brock A. Van Gordon. With her was Tonkon, Torp, Galen, Marmaduke & Booth, Portland.

Margaret H. Leek Leiberan, Portland, appeared for respondents Kino Barker and Helene Barker. With her was Lang & Smith, Portland.

Before Richardson, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

Richardson, P. J., dissenting.

## VAN HOOMISSEN, J.

This appeal is before us on remand from the Supreme Court, 294 Or 761, 662 P2d 714 (1983), which reversed our decision at 59 Or App 740, 652 P2d 817 (1982), and directed us to consider the other alleged errors claimed by PGE.[1]

The facts have been detailed in the Supreme Court's opinion and in the previous majority and separate opinions of this court. PGE makes six assignments of error, which the Supreme court summarized as:

> "* * * [1] [F]ailure to grant either the motion to dismiss or the motion for a directed verdict; [2] failure to exclude evidence of new signs as inadmissible post-accident remedial action; [3] admission of evidence of the cost of an attendant; [4] failure to admit a 1949 letter from a governmental agency; and [5 and 6] failure to give two requested instructions regarding the state policy concerning immunity of landowners as indicated by ORS 105.660 and ORS 390.010. * * *" 294 Or at 764.

The first of those assignments was rejected by the Supreme Court. The partly concurring and partly dissenting opinion in our earlier decision correctly analyzes the third, fourth, fifth and sixth assignments, and we adopt the parts of that opinion that address and find no merit in those assignments. *See* 59 Or App at 748-50.

The remaining issue is whether reversal is necessitated by the trial court's admission of evidence that, after plaintiff's injury, PGE installed new warning signs. At the time of the injury, PGE maintained three signs that read simply "HOT WATER" and were visible from the main access route to the hot springs but not from the route used by plaintiff and his grandmother. The new signs read:

---

[1] PGE brought a third party action against plaintiff's grandparents, Kino and Helene Barker, alleging that their negligent supervision caused his injuries. The Barkers prevailed on that claim in the trial court. Although the disposition of the third party action is part of the judgment from which PGE appeals and the Barkers are designated as respondents, PGE made no assignment of error pertaining to the third party action, and that case has never been an issue in the Supreme Court's or in our consideration. *See* 294 Or at 764 n 1. The Supreme Court's direction to us on remand is not broad enough to enable us to make a separate *disposition* at this time of the part of the judgment that decides the third party action. We nevertheless note that that part of the judgment has not been challenged in this appeal and is therefore conclusive. It should be treated accordingly in the trial court's judgment on remand.

"CAUTION
"HOT WATER
"SOME WATER & ROCK TEMPERATURES
IN THIS AREA ARE HIGH ENOUGH TO
CAUSE BURNS

"ACTIVITIES OF CHILDREN & PETS
SHOULD BE MONITORED CLOSELY."

PGE argues that evidence of the change in the language of the signs was inadmissible under the rule excluding evidence of post-accident remedial measures. PGE is correct, for the reasons articulated in the earlier concurring and dissenting opinion. *See* 59 Or App at 751-55; *see also* OEC 407.

It remains to be determined whether the error was harmless. We conclude that the error was not harmless for the reasons stated in the earlier concurring and dissenting opinion. *See* 59 Or App at 755-57.

Reversed and remanded for a new trial.

**RICHARDSON, P. J.,** dissenting.

In my opinion, the error upon which the majority bases its holding was harmless, and I would therefore affirm the judgment.

There was evidence before the jury that, at the time of plaintiff's injury, the signs read "HOT WATER" and contained no additional cautionary or explanatory language. As defendant acknowledges in a different context, "it goes without saying that it was feasible to add a few words to these signs." *See also Van Gordon v. PGE Co.,* 59 Or App 740, 754, 652 P2d 817 (1982) (separate opinion of Van Hoomissen, J.) Hence, independently of the evidence that the language of the signs was in fact changed, the jury knew what the signs said and did not say when plaintiff was injured and the jury also knew that the signs could easily have been changed to say more.

There was no evidence that defendant was aware of plaintiff's injury when it changed the signs. The *most* damaging inference against defendant that the jury *could* draw from the inadmissible evidence was that defendant realized in the abstract that stronger warning language would be a better guarantor of safety than the original language. The jury could

have drawn the same inference from other evidence which was properly before it. The rationale for the rule excluding evidence of "subsequent repairs," that they constitute an "implied admission" of responsibility for an earlier event, therefore has no realistic application to the facts here.

Moreover, the change in the *wording* of the signs was essentially irrelevant to any factual issue in the case. The *location* of the signs was the issue. Plaintiff's grandmother testified that she did not see the signs before the accident occurred. An employe of defendant testified to the effect that the *signs* could be seen from the route plaintiff and his grandmother followed to the water, but that the *wording* on them probably was not visible from that vantage point. I consider it virtually impossible that the jury ascribed weight to the sufficiency of the words on the signs rather than to the fact the words were not and could not be seen by plaintiff's grandmother.

It may be that the rule excluding evidence of subsequent repairs should seldom be a basis for reversing a fury's verdict. The premise of the rule is that, if evidence of post-accident repairs were admissible, tortfeasors would be discouraged from making repairs, because a factfinder might infer an acknowledgment of antecedent responsibility from the remedial action. Stated otherwise, the rule hypothesizes that the average tortfeasor would rather cause further injury and incur further liability than have an *implied* admission of culpability attributed to him because he corrected the condition that led to the first injury. The hypothesis is a poor commentary on human nature: it presumes that economic stupidity and injurious intent are general characteristics. Reasonable jurors might be far less likely to infer an "admission" from the making of a repair than the jurists who devised the evidentiary rule surmised. Indeed, a jury might be more likely to find the defendant to be praiseworthy for his remedial efforts.

In any event, it is unnecesary to speculate here whether jurors would *ever* be *likely* to draw the improper inference. For the reasons I have stated, there was simply nothing before the jury in this case from which it *reasonably could* infer that the change in the signs was an admission by defendant that it was responsible for something it did not know had happened.